CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
or Roanoke
MAY 2 6 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GORDON FRANKLIN SPROUSE II, | ) | CIVIL ACTION NO. 7:04CV00596 |
| Petitioner, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| UNITED STATES OF AMERICA,[1] | ) | |
| Respondent. | ) | JUDGE JAMES H. MICHAEL, JR. |

On October 13, 2004, petitioner Gordon Franklin Sprouse II filed this motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Sprouse challenges his conviction for willfully setting two fires on public land, in violation of 18 U.S.C. § 1855. On February 17, 2004, the United States responded to petitioner's motion and requested that summary judgment be entered on behalf of the government. Pursuant to the court's October 19, 2004 order, petitioner had twenty days in which to file a response after the respondent filed an answer. Petitioner filed a reply to the government's response on May 6, 2005. The court notes that the petitioner's reply was untimely, but the court considered all of petitioner's arguments out of an abundance of caution. This action is now ripe for the court's consideration. Upon review of the record, the court denies petitioner's § 2255 motion. The court also denies petitioner's motion to obtain access to the original tape recording of his purported confession and to the tape recorder on which it was made.

---

[1] In a footnote in its January 10, 2005 order, the court notified the petitioner that he had improperly named the prison warden, rather than the United States, as the respondent in this action. The court requested that petitioner take appropriate steps to correct this error, but petitioner failed to do so. Therefore, the court, *sua sponte*, dismisses W. Dallas, Warden (FCI Butner), from this action and substitutes the United States as the defendant in this case.

I.  PROCEDURAL HISTORY

On June 6, 2001, Sprouse was indicted with two counts of willfully setting fires in the George Washington National Forest on April 9, 2001 and May 14, 2001. Sprouse had been a volunteer firefighter with the Craigsville Fire Department during the time that he allegedly set these fires. Although Sprouse was suspected of setting many fires in the Deerfield District of the National Forest over the course of several years, he was only charged with setting those two particular fires. After a four day trial, Sprouse was found guilty of both counts. During the trial, Sprouse was represented by counsel, John S. Hart, Jr.

On March 27, 2002, Sprouse was sentenced to 97 months imprisonment and a period of supervised release, and he was ordered to pay restitution. This sentence was reversed by the Fourth Circuit Court of Appeals and remanded. On October 14, 2003, this court resentenced Sprouse to a total term of imprisonment of 84 months, a period of supervised release, and a reduced amount of restitution. On October 13, 2004, Sprouse filed this timely petition for relief under § 2255.

Sprouse alleges the following grounds for relief in his § 2255 motion:

1. Sprouse claims that his sentence was imposed in violation of his Sixth Amendment right to a jury trial because it was based on factors that he did not admit and that were not found by the jury.[2]

2. Sprouse claims that he received ineffective assistance from his trial counsel because his counsel failed to raise and preserve his *Apprendi* claim for appeal.

---

[2] The court notes that Sprouse did not list this claim in his § 2255 petition, but he did present this claim in Part I.A. of his memorandum of law in support of his petition.

3.  Sprouse claims that he received ineffective assistance of counsel because his trial counsel failed to conduct a scientific examination of the defendant's alleged taped confession.

Finally, on October 13, 2004, Sprouse also moved the court for an order granting access to the original tape recording of his alleged confession so that he could have it scientifically examined.

Because this court finds that the record in this case conclusively shows that the petitioner is entitled to no relief, it declines to hold an evidentiary hearing. *See* 28 U.S.C. § 2255.

## II. DISCUSSION

### A. Sixth Amendment Violation at Sentencing

Sprouse argues that the trial court plainly erred by enhancing his sentence based on facts that he did not admit and that were not found by a jury. He claims that such a sentence violates the Sixth Amendment, as interpreted in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

This claim must be dismissed because the rule announced in *Blakely* and made clear in *United States v. Booker* does not apply retroactively to cases on collateral review. In *Booker*, the Supreme Court specified only that the holding in that case applies to all cases on *direct* review. 125 S. Ct. 738, 769 (2005). Several courts have already found that *Booker* does not apply retroactively to cases on collateral review. *See, e.g., McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005). The *Booker* holding is not retroactive because it involves a procedural rather than a substantive rule, and it is not one of those rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *McReynolds*, 397 F.3d at 481 (quoting *Schriro v. Summerlin*, 124 S. Ct. 2519, 2524

3

(2004)). Thus, *Booker* does not apply to criminal cases that were already final before the Supreme Court issued the *Booker* opinion on January 12, 2005. *Id.*; *see also Lilly v. United States*, 342 F. Supp. 2d 532, 535 (W.D. Va. 2004) (holding, before *Booker*, that if the Supreme Court were to hold the federal guidelines unconstitutional, the new rule would not apply retroactively to cases on collateral review).

### B. Ineffective Assistance: Counsel's Failure to Challenge Sentencing Enhancements

To prove ineffective assistance of counsel, the defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance on the part of an attorney means that the counsel's representation fell below "an objective standard of reasonableness" as measured by prevailing professional norms and "viewed as of the time of counsel's conduct." *Id.* at 688, 690.

Sprouse claims that he received ineffective assistance of counsel because his lawyer, John Hart, Jr., did not preserve an *Apprendi* claim for appeal by challenging the court's use of enhancements at sentencing. In the Presentence Report (PSR), the probation officer recommended a base offense level that was based on a finding that Sprouse "created a substantial risk of death or serious bodily injury to any person other than the participant in the offense, and that risk was created knowingly." In addition, the court applied two enhancements to petitioner's sentence, although one enhancement was not used at resentencing after the Fourth Circuit ruled that it should not be applied in this case. Petitioner argues that Hart should have objected to the trial court's sentence because it was based on facts that petitioner never admitted and that were

4

never found by the jury beyond a reasonable doubt. Because Hart did not do this, Sprouse's appellate counsel was barred from raising this *Apprendi* claim on appeal.

It is the court's view that Sprouse is alleging that his trial counsel's performance was deficient because his lawyer did not anticipate the recent change in the law as announced in *Booker*. This court rejects petitioner's argument. Hart's conduct, viewed in light of the prevailing case law at the time, was entirely reasonable. "Counsel is not required to forecast changes in the governing law." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990)).

In addition, district courts that have confronted this question have come to the same conclusion that an attorney's failure to anticipate *Booker* does not constitute ineffective assistance. *See, e.g., Muniz v. United States*, 360 F. Supp. 2d 574, *13 (S.D.N.Y. 2005) ("[B]ecause counsel's performance must be judged as of the time of counsel's conduct, [petitioner's] attorney cannot be deemed ineffective for failing to anticipate a potential Sixth Amendment challenge as alleged in *Booker*."); *United States v. Wenzel*, 359 F. Supp. 2d 403, 411 (W.D. Pa. 2005) ("Simply stated, [the defendant's attorney] was not ineffective either in failing to forecast the change in the legal landscape brought about by the Supreme Court's *Blakely* decision or in concluding that an *Apprendi* challenge was unlikely to succeed.")

This court finds that Sprouse's trial counsel did not perform deficiently by failing to note an objection under *Apprendi* at Sprouse's sentencing hearing. Therefore, Sprouse's first ineffective assistance of counsel claim must be dismissed.

C.  **Ineffective Assistance: Failure to Scientifically Test Taped Confession**

Sprouse also argues that he received ineffective assistance of counsel because his lawyer

5

failed to have the original tape recording of the defendant's alleged confession scientifically tested.

### 1.     Factual Background

On May 14, 2001, Sergeant Steven Shires, a Virginia State Game Warden, and Officer Reed Johnston, a law enforcement agent with the U.S. Forest Service, questioned Sprouse about his involvement with a fire that was set that day in the National Forest. Sprouse claims that, during that encounter, Shires told him that if he read words that were previously written on a yellow pad of paper, then the officers would not arrest him at that time. The defendant claims that after being threatened in this manner, he read the prepared script and the officers did not arrest him.

Both Sergeant Shires and Officer Johnston testified at trial that Sprouse confessed to them during that May 14 interview and that they did not threaten him in any way or force him to read a prepared script. (Trial Transcript 243-45, 335-338, 344.) This encounter was recorded on audiotape and was played during the trial. (Tr. 249.) Shires testified that after the defendant confessed, he decided to write down some of what the defendant had told them on a pad of paper. (Tr. 336-37.) Shires said that he conferred with Sprouse and that Sprouse approved each sentence before Shires wrote it down. (Tr. 338.) Shires also explained that the officers decided not to arrest Sprouse at that time because they wanted to talk with state and federal prosecutors to see whether they should conduct further investigative work before arresting him and to figure out which jurisdiction would prosecute him. (Tr. 338.)

Special Agents Russ Arthur and Larry Fisher also testified at trial that Sprouse confessed to them after they arrested him on May 17, 2001. (Tr. 370-72, 404-07.) Following that

confession, Agent Arthur wrote down on paper the details of Sprouse's confession. Sprouse reviewed, corrected and signed the written confession. (Tr. 374-76, 409.) This signed confession was also introduced at trial. (Tr. 377.)

Sprouse's counsel, Hart, received copies of the written and audiotaped confessions prior to trial. Sprouse claims that "while the tape contained some of what he had read from the pad, the tape was not an accurate recording of the conversation that he had with Shires and Johnston." (Petition p. 10.) Therefore, Sprouse reasons that the tape must have been altered. In order to have the tape scientifically tested for alteration, the defendant needed to obtain the original tape from the government.[3] Sprouse claims that on multiple occasions prior to trial, he asked Hart to obtain the original tape from the government so that it could be analyzed by an expert, but that Hart was reluctant to get it analyzed. The affidavits from Sprouse's mother and sister state that they were present when Sprouse and his family requested that the tape be scientifically tested. Petitioner claims that, eventually, after lulling the petitioner into thinking that he would get the tape tested, Hart told petitioner and his family that it was too late to test the tape before the trial. At trial, the government introduced the tape recorded confession.

In his affidavit, Hart elaborated on Sprouse's characterization of the facts. Hart contends that when he first met with Sprouse and his family, Sprouse claimed to be innocent. Sprouse said that he had not signed a written confession that the government had produced, nor was the audiotape an accurate depiction of his conversation with officers on May 14. Hart stated, in his

---

[3] The court notes that petitioner has submitted an affidavit from Thomas J. Owen, a purported expert in the field of testing audiotapes for evidence of tampering. Mr. Owen states that he has analyzed petitioner's copy of the taped confession and that he must have the original tape recording to determine whether the tape has been tampered with.

7

affidavit, that Sprouse and his family agreed to pursue a handwriting analysis of the signature on the written confession first. (Hart Aff. ¶ 4.) Mr. Ronald Morris conducted the handwriting analysis and found that the signature could be Sprouse's signature. He also thought that there was a possibility that Sprouse intentionally altered his signature so he could deny that it was his signature in the future. (Hart Aff. ¶ 5.) Because of the results of the handwriting analysis, Hart advised the family that he did not believe that a tape analysis would corroborate Sprouse's version of events. After considering the issue, Hart contends that both Sprouse and his family agreed to rely on Hart's judgment not to test the tape. (Hart Aff. ¶ 6.)

Finally, Reed Johnston and Steven Shires both state in their affidavits that the tape was never altered or changed and that it is an accurate recording of their conversation with Sprouse on May 14, 2001. (Shires Aff. ¶ 2; Johnston Aff. ¶ 7.)

### 2. The Application of *Strickland*

As stated above, to prove ineffective assistance of counsel, the petitioner must show: (1) that counsel's performance was deficient, and (2) that his performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court emphasized that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Moreover, the Court specifically pointed out that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* at 691.

It is certainly sound trial strategy for a lawyer to focus his time and resources on developing and finding evidence that he thinks will be most effective at trial. That appears to be

what Hart did in this case. After receiving the results of the handwriting analysis, Hart did not believe that a scientific analysis of the audiotape would reveal tampering. Therefore, Hart chose to focus on developing other evidence and finding witnesses to corroborate the defendant's story. Hart called Sprouse and his mother to testify at trial. He called several Texaco employees who refuted the government's theory that Sprouse obtained the matches that were used to start the fires from the Texaco. Hart also hired a private investigator to attempt to prove that it was improbable that Sprouse could have started the May 14 fire in under two minutes, as the government witnesses testified. In short, the court does not believe that counsel's performance was constitutionally deficient.

However, even if the court assumes that the alleged error rose to the level of deficient performance, petitioner is still not entitled to relief because this error was not prejudicial to his defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Hart's alleged error of failing to scientifically test the audiotape was not prejudicial under this standard.

Even if the jury had been presented with evidence that the audiotape had been tampered with, the other evidence presented against Sprouse at trial was overwhelming. The government had four witnesses – Officer Reed Johnston, Sergeant Steven Shires, Special Agent Russ Arthur, and Special Agent Larry Fisher – who testified collectively that Sprouse confessed on two different occasions to setting both fires. In addition, Special Agents Arthur and Fisher, who were in no way involved with the May 14 encounter, assisted Sprouse in preparing a written

9

confession on May 17 which Sprouse signed. This written confession was presented to the jury and the jury was given samples of Sprouse's signature so that they could see for themselves that he signed the document. So, even if the tape recorded confession had been discredited as scientifically unsound, the jury still had a signed written confession to consider.

Morever, there was strong evidence which placed Sprouse at the scene of at least two fires, one of which he was charged with setting. Officer Woody Lipps, a law enforcement officer in the U.S. Forest Service, testified that a truck matching the description of that owned by Sprouse was caught on videotape driving on an infrequently traveled mountain road on March 9, 2001 in the same area that a fire was set that day. (Tr. 89.) Although Sprouse was not charged with setting that particular fire, that sighting caused the Forest Service to first suspect Sprouse. In addition, Officer Johnston testified that he saw Sprouse's truck pass by the exact location at the exact time that the May 14 fire was started. (Tr. 234-35.) Right after the officer saw Sprouse's truck pass by, he walked down to the road and smelled smoke. (Tr. 236.) Officer Johnston saw everything except for Sprouse actually lighting a match at the fire scene. Sprouse even admitted at trial that he was driving in the exact location of the May 14 fire at about the time that it was set. (Tr. 428-29.)

Numerous firefighters also testified that Sprouse was often the first person to respond to the fires, which meant that he would assume command of the fire scene, and that he never had any problem locating fires hidden in the forest even though they were often difficult to find. (Tr. Billy Martin 135, 140; Wayne Martin 106 ; Kevin Benson 189-90, 195; Tracey Martin 351-52, 357). While it is true that Sprouse lived in the area and knew it well, so did some of the other firefighters. In fact, Sprouse himself found it difficult to explain why other fire department

members had much more trouble locating the fires. (Tr. 448). Several witnesses also testified and Sprouse admitted on cross examination that since his arrest, there had not been any other unexplained fires set in that area of the forest. (Tr. Lipps 96; Johnston 208-09; Sprouse 457).

Finally, Sprouse could not provide a reliable alibi to the jury on the date of either fire. Sprouse testified that on May 14, about twenty minutes before the fire was discovered, he was traveling on Height Hollow Road to look at some lumber, and that he pulled off on a camping road to relieve himself outside. (Tr. 428.) This was the same camping road where the May 14 fire was started. Later, when speaking to a fellow firefighter on May 14, Sprouse said that he was at the location of the May 14 fire because he needed to relieve himself, but he did not mention that he went there to look at lumber. (Tr. 356.)

Sprouse also testified that, during the time that the April 9 fire was set, he was out shopping with his mother. (Tr. 443-444.) Sprouse's mother corroborated this testimony, however, no one else could corroborate this alibi. Mr. Mawyer, who is the parts manager at Augusta Equipment Company in Staunton, did not recall whether Sprouse was in the store on April 9 and had no record of him picking up parts from his store on that day, as Sprouse had alleged. (Tr. 537-39) In addition, Sprouse claims that he accompanied his mother to pick up taxes from their accountant, Mr. Leach, on their shopping trip on April 9. Sprouse's mother testified that she picked up her taxes and Mr. Leach was there and saw her with her son. (Tr. 481). Mr. Leach testified that his log book indicated that the Sprouses' taxes were picked up on April 9, but that he did not actually see which member of the Sprouse family picked them up. (Tr. 545-46). Most importantly, Robert Black, a fellow firefighter, testified that he asked Sprouse on April 9 why he was late in responding to that fire, and Sprouse indicated that he was

late because he had delivered a tractor to a neighboring town earlier that day. (Tr. 548-49.) Sprouse's statement to Black on April 9 about his whereabouts was blatantly inconsistent with the alibi that he presented at trial.

In short, there was an overwhelming amount of evidence against Sprouse for the jury to weigh, especially considering that Sprouse confessed on separate occasions to four different law enforcement officers and signed a written confession. Therefore, even if Sprouse's trial attorney had the audiotape scientifically tested, there is not a reasonable probability that the result of the trial would have been different.

### III.   MOTION TO PERMIT SCIENTIFIC TESTING OF THE ORIGINAL AUDIOTAPE

Sprouse also filed, with this court, a discovery motion to obtain access to the original tape recording and recorder on which it was made. Under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a party may engage in discovery according to the federal rules if, and to the extent that, "the judge in the exercise of his discretion and for good cause shown grants leave to do so."

Good cause for discovery is shown if petitioner makes a specific allegation that shows reason to believe that, with the discovery, the petitioner may be able to demonstrate that he is entitled to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). As the court stated above, the defendant could have had the tape scientifically tested prior to his trial and conviction, but his trial counsel chose not to do so because he reasonably decided to focus on developing other evidence. In addition, as explained above, this court noted that even if the defendant's expert was able to introduce some evidence of irregularity or tampering, there was not a reasonable probability that such evidence would have altered the outcome of the trial. Therefore, this court

does not believe that petitioner has demonstrated good cause because even if his allegation of tampering is supported, this court has already found that he is not entitled to relief – namely, he has not shown that he has received constitutionally ineffective assistance of counsel. Finally, on multiple occasions after his conviction, this court and the Fourth Circuit have denied the defendant's motions to obtain access to the original tape. *United States v. Sprouse*, Case No. 01-51, Order denying motion to test tape (W.D. Va. May 6, 2002); *United States v. Sprouse*, Case No. 02-4329, Order denying permission to test tape (4th Cir. May 28, 2002); Order on Motion for Reconsideration (4th Cir. June 20, 2002). While those previous motions were not brought in the context of a § 2255 petition, the court chooses to follow its precedent on this issue and declines to exercise its discretion in favor of further discovery because the court concludes that petitioner was denied effective assistance of counsel.

For these reasons, the court declines to exercise its discretion to allow the petitioner access to the original tape and tape recorder. This court also finds that petitioner has not shown "good cause" to support his discovery motion.

### IV. CONCLUSION

For the reasons stated above, the court will grant the government's motion for summary judgment and deny the petitioner's § 2255 motion in its entirety. In addition, the court denies the petitioner's discovery motion to obtain access to the original taped confession and tape recorder. An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 60 days of the date of entry of this order, or within such extended period as the court may grant pursuant

to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to petitioner and to counsel of record for respondent.

ENTERED: _____
         Senior United States District Judge

         __5/26/2005__
         Date